01

02

03

04

05

06                          UNITED STATES DISTRICT COURT
                         WESTERN DISTRICT OF WASHINGTON
07                                  AT SEATTLE

08  JOSEPH ANDREW HYLKEMA,              )
                                        )   CASE NO. C11-0211-MAT
09          Plaintiff,                  )
                                        )
10          v.                          )
                                        )
11  ASSOCIATED CREDIT SERVICE INC.,     )   ORDER RE: PENDING SUMMARY
    etc.,                               )   JUDGMENT MOTIONS
12                                      )
            Defendants.                 )
13  _____)

14                                INTRODUCTION

15          Plaintiff Joseph Andrew Hylkema proceeds *pro se* in this civil matter alleging violations

16  of the Fair Debt Collection Practices Act and the Washington Consumer Protection Act by

17  defendants  Associated  Credit  Service  Incorporated  (ACS)  and  Linda  and  John  Doe.

18  Defendants filed a motion for summary judgment.  (Dkt. 21.)  Plaintiff opposed defendants'

19  motion and filed a cross-motion for partial summary judgment.  (Dkt. 25.)  Having considered

20  the pending motions, all accompanying documents, and the remainder of the record, the Court

21  concludes that defendants' motion for summary judgment should be GRANTED, plaintiff's

22  cross-motion DENIED, and this matter DISMISSED.

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -1

01                                    <u>BACKGROUND</u>

02          This case involves a debt in the amount of $353.99 assigned to plaintiff and owing to

03   Sacred Heart Medical Center.  (*See* Dkt. 23 at 4.)  Defendant ACS sent plaintiff a notice of

04   assignment of debt on September 25, 2010 and a subsequent letter on October 25, 2010.  (Dkt.

05   26, ¶¶ 8.1, 8.2 and Ex. C.)

06          On January 19, 2011, plaintiff telephoned ACS after observing a notation regarding the

07   debt on a credit report.  He recorded the ensuing conversation with defendant Linda Doe.

08   Defendants provide a transcript of that conversation to the Court.  (Dkt. 23.)  Plaintiff orally

09   disputed the debt in his conversation with Doe.  (*Id.*)  Among other topics, Doe and plaintiff

10   discussed putting the dispute of the debt in writing and "charity care" at Sacred Heart Medical

11   Center.  (*Id.*)

12          Following his conversation with Doe, plaintiff checked his credit report through

13   Experian, a national reporting agency, on a number of occasions.  Experian credit reports

14   supplied by plaintiff do not reflect plaintiff's dispute of the debt.  (Dkt. 26, Ex. A.)  Finding

15   no report of his dispute through Experian, plaintiff filed a Complaint in this Court on February

16   7, 2011.  (*See* Dkt. 1.)

17                                    <u>DISCUSSION</u>

18          Summary judgment is appropriate when a "movant shows that there is no genuine

19   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

20   R. Civ. P. 56(a).  The moving party is entitled to judgment as a matter of law when the

21   nonmoving party fails to make a sufficient showing on an essential element of his case with

22   respect to which he has the burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -2

01   (1986).  The Court must draw all reasonable inferences in favor of the nonmoving party.

02   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

03         The central issue is "whether the evidence presents a sufficient disagreement to require

04   submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

05   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The moving party bears the

06   initial burden of showing the district court "that there is an absence of evidence to support the

07   nonmoving party's case."  *Celotex Corp.*, 477 U.S. at 325.  The moving party can carry its

08   initial burden by producing affirmative evidence that negates an essential element of the

09   nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed

10   to satisfy its burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

11   *Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden then shifts to the nonmoving party to

12   establish a genuine issue of material fact.  *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

13         In supporting a factual position, a party must "cit[e] to particular parts of materials in

14   the record . . .; or show[] that the materials cited do not establish the absence or presence of a

15   genuine dispute, or that an adverse party cannot produce admissible evidence to support the

16   fact."  Fed. R. Civ. P. 56(c)(1).  The nonmoving party "must do more than simply show that

17   there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co.*, 475

18   U.S. at 585.  "[T]he requirement is that there be no *genuine* issue of material fact.  . . . Only

19   disputes over facts that might affect the outcome of the suit under the governing law will

20   properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247-48 (emphasis

21   in original).  "The mere existence of a scintilla of evidence in support of the non-moving

22   party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v.*

01    *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Nor can the nonmoving party "defeat

02    summary judgment with allegations in the complaint, or with unsupported conjecture or

03    conclusory statements."  *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir.

04    2003).

05           In this case, for the reasons described below, the Court finds defendants entitled to

06    summary judgment.

07    A.    <u>Fair Debt Collection Practices Act</u>

08           Section 1692e of the Fair Debt Collection Practices Act (FDCPA) prohibits a debt

09    collector from using "any false, deceptive, or misleading representation or means in connection

10    with the collection of any debt." 15 U.S.C. § 1692e.   Its purpose "is to protect vulnerable and

11    unsophisticated debtors from abuse, harassment, and deceptive collection practices."

12    *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 938 (9th Cir. 2007).

13           "[W]hether conduct violates [the FDCPA] requires an objective analysis that considers

14    whether 'the least sophisticated debtor would likely be misled by a communication.'"

15    *Donohue v. Quick Collect, Inc*., 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Guerrero*, 499

16    F.3d at 934).   This least sophisticated debtor standard "'ensure[s] that the FDCPA protects all

17    consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the

18    credulous.'"   *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir.

19    2006) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)).

20           The FDCPA is a strict liability statute which should be construed liberally in favor of

21    the consumer.  *Id*. at 1175-76.  "[D]ebt collectors generally are liable for violating the

22    FDCPA's requirements without regard to intent, knowledge or willfulness."  *Hunt v. Check*

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -4

01 *Recovery Sys., Inc.*, 478 F. Supp. 2d 1157, 1169 (N.D. Cal. 2007).   The FDCPA "does not

02 provide an exception allowing the use of otherwise disapproved tactics in response to bad

03 behavior on the part of the consumer."   *Harper v. Collection Bureau of Walla Walla, Inc.*, No.

04 C06-1605-JCC, 2007 U.S. Dist. LEXIS 88993 at *14 (W.D. Wash. Dec. 4, 2007).   However,

05 the FDCPA does provide a bona fide error defense, 15 U.S.C. § 1692k(c), and allows for an

06 award of attorney's fees to a defendant where a Court concludes an action "was brought in bad

07 faith and for the purpose of harassment," § 1692k(a)(3).

08      Plaintiff here raises three counts under the FDCPA, alleging violation of §§ 1692e(5),

09 (8), and (10).   Defendants move to dismiss all three counts on summary judgment and, alleging

10 plaintiff's bad faith, seek an award of attorney's fees and costs.   Plaintiff, in his cross-motion,

11 seeks to establish ACS's liability for violating § 1692e(8) and both defendants' liability for

12 violating § 1692e(10).   Plaintiff also requests that the Court dismiss any bona fide error

13 defense raised by defendants.

14      (1)      Section 1692e(5):

15      Section 1692e(5) of the FDCPA prohibits "[t]he threat to take any action that cannot

16 legally be taken or that is not intended to be taken."   Plaintiff alleges defendants violated this

17 section by threatening to sue him "when it did not intend to do so because Plaintiff's account

18 did not meet Defendant's suit criteria."   (Dkt. 1, ¶ 5.1.)

19      Pointing to the transcript of plaintiff's conversation with Doe, defendants deny the

20 existence of any threat.   They assert Doe properly told plaintiff it was in his best interest to put

21 his dispute of the debt in writing in order to avoid litigation.   As defendants note elsewhere in

22 their motion, the FDCPA requires a consumer to dispute a debt in writing in order to stop

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -5

01 further collection activities.   15 U.S.C. § 1692g(b).   Defendants deny the existence of the

02 alleged "suit criteria" and aver, despite the absence of any threat, that ASC has and continues to

03 use the court system to collect on accounts.

04       Plaintiff asserts, "[b]ased on [his] education, training and experience in the debt

05 collection industry," his knowledge that collection agencies "rarely sue consumers to enforce

06 collection of debts."   (Dkt. 26, ¶ 9.)   He opines that, "in [his] experience, no agency will file

07 suit in the absence of a verified source of garnishable income or, less frequently, real property

08 that a lien can be attached to[,]" and states that, because ACS did not have such information

09 about him, he is "firmly of the belief that it had no intention of suing [him]."   (*Id.*)   Plaintiff

10 also notes that defendants moved for summary judgment some eight months prior to the

11 discovery cutoff and suggests the Court defer a ruling on this issue to allow discovery regarding

12 ACS's practices.   *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration

13 that, for specified reasons, it cannot present facts essential to justify its opposition, the court

14 may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or to take

15 discovery; or (3) issue any other appropriate order.")

16       Plaintiff does not dispute that defendants could take the step of pursuing legal recourse

17 in response to unpaid debts.   Instead, he conjectures defendants had no intention of doing so in

18 this case.   However, plaintiff does not respond to the contention that defendants never made a

19 threat to take action against him in the first instance.   Further, plaintiff sets forth no basis for a

20 continuance to allow discovery in relation to this particular issue or to otherwise dispute that a

21 determination of the issue may be made by reviewing the transcript of his conversation with

22

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -6

01  defendant Doe.[1]

02       Plaintiff and Doe engaged in the following conversation:

03  MR. HYLKEMA:  I don't remember going to the hospital then.  I actually
04  dispute this debt.

05  MS. LINDA ARBUCKLE:  Okay.  Just make sure you get it in writing for
    legal purposes.  Because if an account is not paid after so many days, it ends up
06  going in for lawsuit.  So to avoid that you just want to get that sent in in writing.

07           . . .

08  MR. HYLKEMA:  This is on my credit right now.  Now that I've told you it's
    disputed, you have to report it as being disputed.

09  MS. LINDA ARBUCKLE:  Yeah.  Once we get it in writing.

10  MR. HYLKEMA:  No.  Once I tell you on the phone.  Once I place you on
11  notice orally that it's disputed, you have to report it as disputed.

12  MS. LINDA ARBUCKLE:  Okay.  But we don't have any reason why you're
    disputing it.  That's why we need it in writing.  I can go ahead and mark it, but
    it can still go in for lawsuit.  I'm just trying to help you, not start an argument
13  here.

14  (Dkt. 23 at 7-8.)  (*See also id*. at 12 (Doe also later stated:  "I will note the account, but can

15  you get that in writing for us for legal purposes?"))  When plaintiff then asked whether

16  defendants were "going to take [him] to court on this[,]" Doe responded:  "No.  I'm just

17  saying if you are disputing it and there's no payment and we don't get any dispute in writing,

18  then it could go in for suit.  I'm just trying to tell you what could happen."  (*Id*. at 8.)  Also,

19  _____

20      1  A party requesting a deferral or denial under Rule 56(d) "must show: (1) it has set forth in
affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and
(3) the sought-after facts are essential to oppose summary judgment."  *Family Home & Fin. Ctr. v. Fed.*
21  *Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (cited source omitted).  Plaintiff, at
most, sets forth a basis for requesting a deferral for discovery in relation to ACS's intention to sue.  (*See*
22  Dkt. 29 at 3.)  Because he did not make a showing in relation to any other issue, the Court does not
otherwise consider Rule 56(d) in this Order.

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -7

01   when plaintiff thereafter asked whether there was "a very good chance of that happening[,]"

02   Doe replied:   "I wouldn't be able to tell you that."   (*Id*. at 8-9.)

03        This Court must consider whether the language used by Doe could be read as a threat to

04   take action.   In making this determination, the Court considers the language from the

05   perspective of the hypothetical least sophisticated debtor.   As discussed below, the Court finds

06   no basis for concluding defendants conveyed a threat to take action against plaintiff.

07        The transcript reveals that Doe advised plaintiff to put his dispute of the debt in writing

08   in order to avoid the possibility of litigation to collect on the debt.   "The Ninth Circuit does not

09   construe threats of litigation so broadly as to include debt collection attempts that are merely

10   prudential reminders of the possible consequences of failure to pay."   *Abels v. JBC Legal*

11   *Group, P.C.,* 428 F. Supp. 2d 1023, 1028-29 (N.D. Cal. 2005).   Here, the least sophisticated

12   debtor would understand the statements made as providing "a prudential reminder" that the

13   failure to put the dispute of the debt in writing could lead to litigation.   *See Wade v. Regional*

14   *Credit Ass'n*, 87 F.3d 1098, 1099-1100 (9th Cir. 1996) (addressing a written notice stating: "'If

15   not paid TODAY, it may STOP YOU FROM OBTAINING credit TOMORROW. PROTECT

16   YOUR CREDIT REPUTATION. SEND PAYMENT TODAY. . . .   DO NOT DISREGARD

17   THIS NOTICE. YOUR CREDIT MAY BE ADVERSELY AFFECTED."; finding the

18   language informational, not threatening, "notifying Wade that failure to pay could adversely

19   affect her credit reputation. There was no threat to sue. The least sophisticated debtor would

20   construe the notice as a prudential reminder, not as a threat to take action.")   *See also Dunlap v.*

21   *Credit Prot. Ass'n, L.P.*, 419 F.3d 1011, 1012-13 (9th Cir. 2005) (letter from collection agency

22   warning a debtor it was "'an attempt to collect a debt' and that 'any information obtained will

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -8

01  be used for that purpose,'" notifying the debtor that his account was past due, and informing

02  him of his right to dispute the debt, did not violate § 1692e(5); finding the letter "at worst, only

03  vaguely and generally implies that the reader should pay his debt in order to protect his credit

04  rating.") (citing *Wade*, 87 F.3d at 1099-1100); *Hylkema v. Capital Recovery Assoc., Inc.*, No.

05  C03-3686P, slip op. at 4 (W.D. Wash. Sep. 20, 2004) (Dkt. 15) (a letter stating it served as ten

06  days notice "before any legal action [] was recommended[]" and that no decision had "yet been

07  made to pursue this claim through the courts because that option rests with our client[,]" did not

08  constitute a threat to take unlawful action under § 1692e(5)).   Indeed, when asked by plaintiff,

09  Doe explicitly clarified she was informing him merely as to a future possibility in relation to the

10  debt.   (Dkt. 23 at 8.)

11       In sum, defendants establish through the transcript an absence of evidence to support

12  plaintiff's claim of a threat in violation of § 1692e(5).   The Court finds no genuine issue of

13  material fact in relation to this claim and plaintiff's first cause of action under the FDCPA

14  subject to dismissal on summary judgment.

15       (2)   Section 1692e(8):

16       Section 1692e(8) of the FDCPA prohibits "[c]ommunicating or threatening to

17  communicate to any person credit information which is known or which should be known to be

18  false, including the failure to communicate that a disputed debt is disputed."   Plaintiff avers in

19  his second FDCPA count that defendant ACS "threatened to communicate and has in fact

20  communicated false credit information, including the failure to communicate that Plaintiff

21  disputed the validity of the Alleged Debt."   (Dkt. 1, ¶ 5.2.)

22       Defendants assert that, following plaintiff's oral dispute of the debt, no further

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -9

01  collection activities were taken, the debt was marked as disputed in ACS's computer system,

02  and the dispute was reported to all three national reporting agencies.   (Dkt. 22 at 4-5.)

03  Defendants point to its "case summary report", or case notes, as documenting the noted dispute,

04  and aver the absence of any evidence ACS communicated any false credit information or that it

05  failed to communicate the debt as disputed.   Defendants state they "have no control over what

06  each reporting agency does or how rapidly they adjust their reports."   (Dkt. 21 at 9.)

07          Plaintiff contends he checked his Experian credit report seven times after his January

08  19, 2011 conversation with Doe, and that, as late as March 18, 2011, the report failed to show

09  the debt as disputed.   (Dkt. 26, ¶4 and Ex. A (credit reports dated December 29, 2011, January

10  27, 2011, and March 18, 2011).)   He contends the case notes confirm that:   "Immediately after

11  the call, rather than mark the account as disputed (status DSP), ACS put the account in active

12  collection status (status SNM) and ran a skiptrace search to find new information on Plaintiff,

13  i.e., it did not cease collection of the Alleged Debt[.]"   (*Id*., ¶ 8.4 and Ex. C.)   Plaintiff further

14  relies on the case notes as showing that, even after being served with the instant lawsuit on

15  February 7, 2011, ACS did not take any action with respect to credit reporting until March 21,

16  2011, when the "credit bureau reporting flag (CBR Type) was changed, first from Y (report as

17  undisputed) to C (consumer disputes account information per the Fair Credit Reporting Act),

18  and then from C to Z (delete account entirely)."   (*Id*., ¶ 8.5 and Ex. C.)

19          Defendants, in response, submitted a supplemental declaration from David Solberg,

20  officer and owner of ACS, disputing plaintiff's interpretation of the case notes.   (Dkt. 28.)

21  Solberg states that "SNM" means "send no mail" and "DSP" means "disputed[,]" and avers that

22  ACS did show the account as disputed and ceased further collection efforts.   (*Id*., ¶ 4.)

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -10

01          Ninth Circuit law is clear that "[o]ral dispute of a debt precludes the debt collector from

02   communicating the debtor's credit information to others without including the fact that the debt

03   is in dispute." *Camacho v. Bridgeport Fin. Inc.*, 430 F.3d 1078, 1082 (9th Cir. 2005).

04   Therefore, a defendant with notice a debt is in dispute violates § 1692e(8) by communicating

05   with a third party about the debt without disclosing the dispute. *See Brady v. Credit Recovery*

06   *Co., Inc.*, 160 F.3d 64, 67 (1st Cir. 1998) ("§ 1692e(8) merely requires a debt collector who

07   knows or should know that a given debt is disputed to disclose its disputed status to persons

08   inquiring about a consumer's credit history."); *Perez v. Telecheck Services, Inc.*, 208 F. Supp.

09   2d 1153, 1156 (D. Nev. 2002) (same).

10          The Court first notes the absence of support for plaintiff's contention that defendants

11   failed to internally mark his debt as disputed.   The case notes show fourteen separate entries

12   dated January 19, 2011.   (Dkt. 26, Ex. C.)   The first entry on that date shows the status of the

13   account as "DSP", which plaintiff concedes means "disputed".   (*Id*., ¶ 8.4 and Ex. C.)   The

14   second entry states "Status Chg:   SNM to DSP", while another entry states "Dispute Charges"

15   and another indicates plaintiff was advised the account would be noted as disputed.   (*Id*., Ex.

16   C.)   While it is unclear why some of the fourteen status entries dated January 19, 2011 reflect

17   the debt status as "SNM", the evidence as a whole clearly establishes that ACS promptly

18   marked the account as disputed.

19          More importantly, however, plaintiff fails to set forth any factual basis for a contention

20   that defendant ACS at any point violated § 1692e(8) by engaging in a communication with a

21   third party in which it failed to disclose the fact that plaintiff disputed the debt, or otherwise

22   communicated or threatened to communicate any false information.   At most, plaintiff

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -11

01 contends ACS "ran a skiptrace search to find new information on Plaintiff[.]"   (*Id.*, ¶ 8.4.)

02 This assertion does not support a contention that defendants engaged in a communication with a

03 third party regarding plaintiff's debt.   Nor does plaintiff point to any other evidence

04 demonstrating the existence of such a communication.   In fact, the credit reports submitted by

05 plaintiff appear to reflect no activity regarding the debt after November 2010.   (*Id.*, Ex. A.)

06      Instead of supplying evidence of a communication or threatened communication,

07 plaintiff reads into the FDCPA an affirmative obligation to contact credit reporting agencies

08 with the fact that a debt is disputed.   (*Id.*, ¶ 5 ("Satisfied that ACS had no intention of reporting

09 the account as disputed as it was required to do, I commenced my lawsuit on February 7,

10 2011."))   As noted above, ACS maintains it did report the dispute to the credit agencies, while

11 plaintiff points to the absence of any evidence the credit agencies were aware of the report until

12 on or about March 21, 2011.   However, the Court finds no dispute of material fact precluding

13 summary judgment given its conclusion that ACS was not obliged to contact the credit agencies

14 to report the dispute.

15      In *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008), the Eighth Circuit found

16 no affirmative duty to report the fact that a consumer disputed a debt absent a communication in

17 which that fact should have been reported.   Instead, "if a debt collector *elects* to communicate

18 'credit information' about a consumer, it must not omit a piece of information that is always

19 material, namely, that the consumer has disputed a particular debt." *Id*. (emphasis in original).

20 The Court noted Federal Trade Commission (FTC) Staff Commentary to the FDCPA

21 confirming its conclusion:

22      1. Disputed debt. If a debt collector knows that a debt is disputed by the

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -12

01         consumer . . . and reports it to a credit bureau, he must report it as disputed.

02         2. Post-report dispute. *When a debt collector learns of a dispute after reporting*
        *the debt to a credit bureau, the dispute need not also be reported.*

03

04 *Id*. (citing FTC Staff Commentary, 53 Fed. Reg. 50097-02, 50106 (Dec. 13, 1988)) (emphasis

05 included in case citation).   While the Ninth Circuit has not directly addressed this precise issue,

06 it has implicitly recognized that § 1692e(8) prohibits the omission of information as to a dispute

07 within the context of an actual communication to a third party.   *See Camacho*, 430 F.3d at

08 1082 ("Oral dispute of a debt precludes the debt collector from communicating the debtor's

09 credit information to others without including the fact that the debt is in dispute.")

10         Here, there is no indication of a communication or threatened communication in which

11 defendants failed to convey plaintiff's dispute of the debt.   Plaintiff, accordingly, sets forth no

12 basis for a violation of § 1692e(8).   *See, e.g.*, *Wilhelm*, 519 F.3d at 418 (summary judgment

13 properly granted where plaintiff presented no evidence of communication of credit information

14 to credit reporting agency after defendant learned of debt dispute).   The Court finds plaintiff's

15 cross-motion for summary judgment on his § 1692e(8) claim to lack merit, and defendants

16 entitled to dismissal of this claim on summary judgment.

17         (3)    <u>Section 1692e(10)</u>:

18         Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to

19 collect or attempt to collect any debt or to obtain information concerning a consumer."

20 Plaintiff alleges defendants attempted to collect the debt through "repeated false, misleading or

21 deceptive representations and means, specifically false statements regarding Plaintiff's oral

22 dispute rights[,]" and "also falsely stated that it intended to sue Plaintiff and that Plaintiff was

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -13

01   ineligible to apply for charity care."   (Dkt. 1, ¶¶ 5.3, 5.4.)

02          Defendants point to the transcript as showing Doe repeatedly stated plaintiff's account

03   was being marked as disputed.   Defendants assert that Doe properly informed plaintiff the

04   dispute must be in writing to stop further collection activities.   15 U.S.C. § 1692g(b).   They

05   again deny the existence of any threat to sue plaintiff, and deny Doe stated plaintiff was

06   ineligible for charity care.   Defendants maintain that, in raising these contentions, plaintiff

07   intentionally misstated facts in the Complaint.

08          Pointing to the transcript and ACS case notes, plaintiff argues defendants informed him

09   his dispute would have to be in writing to be effective "(i.e., for the Alleged Debt to be reported

10   to Experian as disputed)."   (Dkt. 26, ¶ 8.3.)   He maintains defendants threatened to sue him

11   without having any intention of carrying out a suit.   He does not, however, raise any argument

12   in relation to charity care.

13          Plaintiff's assertion regarding the threat of suit is subject to dismissal for the reasons

14   outlined above.   That is, contrary to plaintiff's contention, the transcript cannot reasonably be

15   read, from the perspective of the least sophisticated debtor, to support the conclusion that

16   defendants threatened to sue plaintiff.   Likewise, the transcript contradicts plaintiff's

17   contention regarding charity care.   The transcript reveals that plaintiff asked whether the

18   hospital had a charity care policy, and Doe replied:   "Only if you follow the credit procedures,

19   yes, they do.   It looks like that wasn't done."   (Dkt. 23 at 9.)   When plaintiff asked, "Well, I

20   can still follow those procedures, correct?", Doe responded, "I don't know.   This is not the

21   hospital.   I said this is Associated Credit, a collection agency for the hospital."   (*Id.*)

22   Considered as a whole, the least sophisticated debtor could not reasonably understand Doe's

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -14

01  statements as informing plaintiff he was ineligible to apply for charity care, or that Doe was

02  otherwise using any false representation or deceptive means to collect or attempt to collect a

03  debt.

04       Nor does plaintiff support his contention as to the statements made regarding putting his

05  dispute in writing.  Pursuant to 15 U.S.C. § 1692g(b), "a consumer must dispute a debt *in*

06  *writing*, within an initial thirty-day period, in order to trigger a debt validation process."

07  *Brady*, 160 F.3d at 67 (emphasis in original).  *Cf. Camacho*, 430 F.3d at 1082 (finding oral

08  notification sufficient in relation to § 1692g(a)(3), which pertains to the assumption of validity

09  of a debt).  "Once a consumer exercises this right, a debt collector must cease all further debt

10  collection activity until it complies with various verification obligations."  *Brady*, 160 F.3d at

11  67.  "Recognizing the broad consumer power granted by this provision, Congress expressly

12  conditioned its exercise on the submission of written notification within a limited thirty-day

13  window."  *Id.*

14       The transcript, read in full, shows that Doe told plaintiff numerous times the debt was

15  being marked as disputed, and tied the statements challenged here by plaintiff specifically to the

16  potential for further collection activities and litigation:

17       . . . Okay.  Just make sure you get it in writing for legal purposes.  Because if
         an account is not paid after so many days, it ends up going in for lawsuit.  So to
18       avoid that you just want to get that sent in in writing. . .   Okay.  But we don't
         have any reason why you're disputing it.  That's why we need it in writing.  I
19       can go ahead and mark it, but it can still go in for lawsuit. . . .   I'm just saying if
         you are disputing it and there's no payment and we don't get any dispute in
20       writing, then it could go in for suit.  I'm just trying to tell you what could
         happen. . . .  I will note the account, but can you get that in writing for us for
21       legal procedures?. . .  I will go ahead and note for the account that you are
         disputing it. . . .  I will note in your account that you're disputing. . . .   I'm
22       going to note the account like you asked me to. . . .   I'm going to go ahead and

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -15

01          note the account.

02   (Dkt. 23 at 4-5, 12-14.)   As reflected above, Doe did at one point state, "Yeah.   Once we get it

03   in writing[,]" in response to plaintiff stating, "This is on my credit right now.   Now that I've

04   told you it's disputed, you have to report it as being disputed."   (*Id*. at 8.)   However, this

05   statement was sandwiched between the other remarks outlined above and cannot reasonably be

06   read in isolation to support the contention that it would be likely to mislead the least

07   sophisticated debtor as to his rights.

08          The case notes also contradict plaintiff's contention.   The case notes clearly show the

09   debt was noted as disputed.   (Dkt. 26, Ex. C.)   The case notes further mirror the statements in

10   the transcript, reflecting Doe told plaintiff his dispute of the account would be noted, and

11   making a distinction between the noting of plaintiff's account as disputed and the request for a

12   written dispute.   (*Id*. ("SYS HE DISPUTE THIS TOLD HIM WE NEED LTR IN WRITING

13   SYS NO I DNT THINK SO SYS WILL CHCK C/R NXT MNTH N IF STILL ON HERE HE

14   WILL SUE US/TOLD HIM I WOULD NOTE THE FILE…"; "ADV DTR I WILL NOTE U

15   DISPT ACCT[.]"))

16          In sum, contrary to plaintiff's contention, the evidence does not support the allegation

17   that defendants made a false representation or utilized deceptive means to collect or to attempt

18   to collect a debt.   Plaintiff sets forth no genuine issue of material fact and fails to support his

19   motion for summary judgment.   This claim is also subject to dismissal on summary judgment.[2]

20   _____

21          2   Plaintiff seeks the dismissal of any bona fide error defense on the ground that ACS failed to
     produce sufficient evidence it maintains the requisite procedures reasonably adapted to avoid such error.
     *See Clark*, 460 F.3d at 1176-77 ("[A] debt collector is not liable for its violations of the FDCPA if the

22   violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of
     procedures reasonably adapted to avoid any such error."); 15 U.S.C. § 1692k(c).   However, because the

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -16

01  B.      Consumer Protection Act

02          Plaintiff alleges in his Complaint that defendants violated the Washington Consumer

03  Protection Act (CPA) by engaging in unfair acts or practices injurious to the public interest.

04  He specifically alleges violation of the CPA through a threat to impair his credit rating if the

05  debt in question was not paid.  Defendants, pointing to the transcript, aver the absence of any

06  support for such a claim, and contend plaintiff acted in bad faith by intentionally alleging false

07  facts.   They note that plaintiff recorded the conversation and had the recording in his

08  possession at the time he filed the Complaint.

09          Plaintiff does not respond to this argument or otherwise address his CPA claim in his

10  opposition and cross-motion.  Plaintiff's failure to respond is considered a concession that

11  defendants' argument has merit.  Local Civil Rule 7(b)(2).  Moreover, the Court finds an

12  absence of any evidence to support plaintiff's contention that defendants threatened to impair

13  his credit rating if he failed to pay his debt.  (*See* Dkt. 23.)  Plaintiff's CPA claim is,

14  accordingly, subject to dismissal on summary judgment.

15  C.      Attorney's Fees and Costs

16          The FDCPA provides for payment of attorney's fees and costs upon "a finding by the

17  court that an action . . . was brought in bad faith and for the purpose of harassment[.]"   15

18  U.S.C. § 1692k(a)(3).  Defendants argue plaintiff initiated phone contact with ACS for the

19  purpose of attempting to create a violation of the FDCPA by goading and prompting

20  defendants.  (Dkt. 21 at 10.)  They contend plaintiff intentionally misstated facts in the

21  _____

22  Court finds no FDCPA violation, it need not address this argument.

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -17

01   Complaint to create litigation and harass defendants.   Defendants note the existence of some

02   twenty cases filed by plaintiff in this Court alleging violations of the FDCPA, and state that the

03   filing of these cases "appears to be for the purpose of increasing the costs to collection agencies

04   and settling to avoid payment of his debts."   (*Id*. at 11.)

05        Although defendants raise legitimate questions regarding plaintiff's intentions, the

06   Court does not find a sufficient basis upon which to conclude plaintiff filed his complaint in bad

07   faith or for the purpose of harassment.   The Court, therefore, declines to exercise its discretion

08   to award attorney's fees and costs to defendants.

09                                  <u>CONCLUSION</u>

10        For the reasons stated above, plaintiff's motion for partial summary judgment (Dkt. 25)

11   is DENIED, defendants' motion for summary judgment (Dkt. 21) is GRANTED, and this

12   matter is DISMISSED with prejudice.   The Court finds no basis for an award of attorney's fees

13   and costs.

14        DATED this <u>4th</u> day of January, 2012.

15

16                                  _____

17                                  Mary Alice Theiler
                                    United States Magistrate Judge

18

19

20

21

22

ORDER RE: PENDING SUMMARY
JUDGMENT MOTIONS
PAGE -18